**Michael L. DAUNIS, Petitioner–Appellant,**

v.

**Laura A. DAUNIS, Respondent–Appellee.**

**No. 06–3518–cv.**

United States Court of Appeals, Second Circuit.

March 15, 2007.

Andrew D. Glasgow, Atlas Advocate International Law Firm, P.C., Pittsburgh, PA, for Petitioner–Appellant.

Erick M. Sandler, Day, Berry & Howard LLP, Hartford, CT (Michael P. Shea, on the brief), for Respondent–Appellee.

Present: Hon. JOSEPH M. McLAUGHLIN and Hon. RICHARD C. WESLEY, Circuit Judges, Hon. WILLIAM K. SESSIONS, III, District Judge.**

## SUMMARY ORDER

Familiarity by the parties is assumed as to the procedural context and the facts, which we reference only as needed to explain our decision.

On May 8, 2006, Michael Daunis ("Michael") filed a Petition under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), Oct. 25, 1980, 51 Fed.Reg. 10498, 19 I.L.M. 1501, and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11611, with the United States District Court for the District of Connecticut. He requested that the court return his two children, Alana and Nathan (collectively the "Children"), for custody proceedings in Italy, where he was stationed with the Navy. His wife, Laura Daunis ("Laura") removed the Children from Italy on December 24, 2005.

Following an evidentiary hearing, based on its assessment of the credibility of Laura and Michael, the court dismissed Mi-

** The Honorable William K. Sessions III, of the United States District Court of Vermont, sitting by designation.

chael's petition in an oral ruling, finding that Michael had not established that Italy was the Children's habitual residence.

To prevail on a Hague Convention child custody claim, a petitioner must establish by a preponderance of the evidence that: "(1) the child was habitually resident in one State and has been removed to ... a different State; (2) the removal ... was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal." *Gitter v. Gitter,* 396 F.3d 124, 130–131 (2d Cir.2005) (citing 42 U.S.C. § 11603(e)(1)(A)).

First, a court must determine the child's habitual residence. To do this, the court determines the parents' (or other custodians') most recent "shared intent" regarding where the child should live by considering the parents' representations and actions. *Id.* at 134. "Normally the shared intent of the parents should control the habitual residence of the child," and if the parents agree about the habitual residence, a court will generally concur with them. *Id.* at 133–34. When the parents dispute the location of the child's habitual residence, the court must consider "the intentions of those entitled to fix the child's residence at the time those intentions were mutually shared." *Id.* at 133. The parties' shared intent is "a question of fact to which we defer to the district court." *Id.* at 132 (quoting *Mozes v. Mozes,* 239 F.3d 1067, 1076 (9th Cir. 2001)).

Second, regardless of the intent of those entitled to determine the child's habitual residence, we must consider whether "the evidence points unequivocally to the conclusion that the child has become acclimatized to his new surroundings and that his habitual residence has consequently shifted." *Id.* at 133. To determine if a child

has acclimatized, we must consider if "requiring return to the original forum would now be tantamount to taking the child 'out of the family and social environment in which its life has developed.'" *Id.* at 134 (quoting *Mozes,* 239 F.3d at 1081). Only in "relatively rare circumstances" will the child's acclimatization to a new location "be so complete that serious harm to the child can be expected to result from compelling his return to the family's intended residence." *Id.* As a result, courts should be "should be 'slow to infer' that the child's acclimatization trumps the parents' shared intent." *Id.*

We review a district court's credibility determination regarding the parent's testimony about their shared intent for clear error. *Id.* at 135. Here, the Court concluded that "[b]ased on the testimony that has been presented ... the respondent's version of the key events should be credited and ... the petitioner, who has the burden of proof, has failed to sustain that burden because I think his version should not be credited." It credited Laura's testimony that there "was a written, signed, notarized Separation Agreement consistent with" a partial document she provided to the court, and found persuasive her claim that the Separation Agreement contained the parties' agreement that she would be the primary custodial parent and the Children would reside with her. The court also found that Michael had "as late as the fall of 2005, ... manifested his agreement that she would take the [C]hildren back to Connecticut to live."

The court noted that Michael had filed for divorce and custody in Louisiana before Laura left Italy with the Children, "thereby electing his forum, an election that is consistent with the United States being the habitual place of residence of these [C]hildren." While the Children did live in Italy three years, they spent about

half of that time in the United States, and Laura and Michael had "agreed to live abroad for a limited period of time ... and then return to the United States." As a result, the court concluded that Michael "failed to sustain his burden of proving that the habitual place of residence of the [C]hildren as of the time they were removed to the United States was actually Italy." Next, the Court determined that the Children had not been acclimatized to Italy "to any meaningful degree." Because Italy was not the habitual residence, the court held, Michael had not established the "'jurisdictional predicate' required under the Hague Convention," and dismissed the case.[2]

In our view, the district court did not clearly err in finding that the parties' shared intent supported a finding that their habitual residence was not Italy or that the Children had not acclimatized.

Finally, Michael claimed that the District Court did not give him a fair hearing. Having carefully reviewed the record in this case, we conclude that this contention is without merit. The District Court granted Michael a full and fair hearing, which was properly expedited as required by the Hague Convention. *See* 42 U.S.C. § 11601(a)(4).

For the foregoing reasons, the motion to dismiss is DENIED and the district court's decision dismissing the petition is AFFIRMED.

**2.** The court did not reach the issues of whether the removal was in breach of Michael's custody rights or whether Michael was exercising his rights at the time the Children were removed. *Gitter,* 396 F.3d at 130–31.